# UNITED STATES DISTRICT COURT

__NORTHERN_____    DISTRICT OF   __ILLINOIS, EASTERN DIVISION__

UNITED STATES OF AMERICA

v.

DANIEL J. BEALKO

**FILED**
J.N 1-31-08
JAN 3 1 2008

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**CRIMINAL COMPLAINT**

MAGISTRATE JUDGE DENLOW

08CR 0082

08CL 82

(Name and Address of Defendant)

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. Between on or about __January 2002 and December 2003__ in __Cook__ county, in the __Northern__ District of __Illinois__ defendant(s) did,

(Track Statutory Language of Offense)

having devised and intending to device a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, and to defraud General Motors of its intangible right to his honest services, did on or about October 10, 2003, transmit and cause to be transmitted by means of wire, radio, or television communication in interstate and foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice,

in violation of Title _____18_____ United States Code, Section(s) _____1343 and 2_____.

I further state that I am a(n) __FBI Special Agent__ and that this complaint is based on the following facts:
Official Title

Continued on the attached sheet and made a part hereof:   __x__ Yes    _____ No

_____
Signature of Complainant

Sworn to before me and subscribed in my presence,

__JANUARY 31, 2008_____
Date

at   __Chicago, Illinois_____
City and State

__MORTON DENLOW, U.S. Magistrate Judge_____
Name & Title of Judicial Officer

_____
Signature of Judicial Officer

# AFFIDAVIT

I, Brent E. Potter, first being duly sworn under oath, hereby state as follows:

1.　　　I am a Special Agent of the Federal Bureau of Investigation ("FBI"), assigned to the Chicago Field Division. I have been employed by the FBI as a Special Agent for approximately 10 years. At this time, I am assigned to an FBI squad dedicated to the investigation of federal wire and mail fraud offenses, as well as related financial crimes.

2.　　　The information contained in this affidavit is based upon my personal knowledge and witness statements, as well as on information provided to me by other law enforcement officers and review of various records as further described below. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the attached complaint, it does not set forth each and every fact that I have learned during this investigation.

3.　　　This affidavit is made in support of a criminal complaint alleging that, beginning in or about January 2002 and continuing until in or about December 2003, Daniel J. Bealko and Co-Schemer AB devised, intended to devise and participated in a scheme to defraud the General Motors Corporation ("GM"), and to deprive it of the intangible right of the honest services of Bealko by means of materially false and fraudulent

pretenses and representations, in violation of Title 18, United States Code, Sections 1343 and 2.

4.    On June 5, 2007, Magistrate Judge Michael T. Mason granted the application of the FBI for a criminal complaint (case no. 07 CR 360) charging that DANIEL J. BEALKO devised and participated in a scheme to defraud his former employer, the General Motors Corporation ("GM").

5.    In summary, and as more fully described in the Complaint and associated Affidavit, attached as *Exhibit 1* and incorporated by reference as if fully set forth herein, the investigation to date has revealed that, beginning in or about January 2002, Co-Schemer AB engaged in the regular and ongoing payment of bribes to Bealko, then employed as a GM executive, in exchange for Bealko steering the sale of large quantities of bulk aluminum from GM to Co-Schemer AB's company, Fuci Metals USA, on favorable credit terms.  Although Bealko was aware that Fuci was not sufficiently capitalized to do so, he caused GM to sell excess aluminum valued at hundreds of millions of dollars to Fuci, which Fuci was then to resell in the commodities market for a small profit.  Rather than pay down Fuci's debt for the aluminum it had bought from GM, Co-Schemer AB diverted increasing shares of the funds to his own independent business ventures and to support his lifestyle.  When Fuci became insolvent in or about September 2004, it left

- 2 -

behind an unpaid debt to GM of approximately $83,300,000.

6.       The execution of the scheme charged in case no. 07 CR 360,
consisted of a wire transfer of funds that took place on January 16, 2003.
The statute of limitations for wire fraud is 5 years, and thus this execution of
the scheme can no longer form the basis of a charge under 18 USC 1343.
Thus, the government intends to dismiss case no. 07 CR 360, and submits
additional information in this affidavit relating to a later execution of the
scheme that took place on a date within the applicable statute of limitations.

7.       As noted in *Exhibit 1*, analysis of financial records gathered
during the investigation revealed that numerous wire transfers from Co-
Schemer AB through the Fuci account at Bank One were made to a UBS
bank account in Zurich to the attention of Roland Tobler between
approximately November 14, 2002 and December 29, 2003, in amounts
totaling approximately $3.2 million.   For example, on or about October 10
2003, $400,000 was wire transferred from the Fuci Bank One[1] account to a
UBS bank account in Zurich to the attention of Roland Tobler.

## Conclusion

8.       Based upon the foregoing, there is probable cause to believe

---

[1]As previously described in *Exhibit 1*, the Bank One branch at which Co-
Schemer AB primarily conducted the relevant banking business was located in the
Northern District of Illinois.

- 3 -

that, beginning in or about January 2002 and continuing until in or about December 2003, Bealko and Co-Schemer AB devised, intended to devise and participated in a scheme and artifice to defraud the GM, and to deprive it of the intangible right of honest service of Bealko by means of materially false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Sections 1343 and 2.


Brent E. Potter
Special Agent
Federal Bureau of Investigation


SUBSCRIBED AND SWORN TO BEFORE ME
this 31st day of January, 2008.

Morton Denlow,
U.S. MAGISTRATE JUDGE

# UNITED STATES DISTRICT COURT

NORTHERN _____ DISTRICT OF _____ ILLINOIS, EASTERN DIVISION _____

UNITED STATES OF AMERICA

v.

DANIEL J. BEALKO

**RECEIVED**

JUN - 5 2007

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COU

**UNDER SEAL**

**CRIMINAL COMPLAINT**

07CR0360

MAG. JUDGE MASON

(Name and Address of Defendant)

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about _January 16, 2003_ in _Cook_ county, in the _Northern_ District of _Illinois_ defendant(s) did, (Track Statutory Language of Offense)

having devised and intending to device a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, and to defraud General Motors of its intangible right to his honest services, transmit and cause to be transmitted by means of wire, radio, or television communication in interstate and foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice,

in violation of Title _____18_____ United States Code, Section(s) _____1343 and 2_____ .

I further state that I am a(n) __FBI Special Agent__ and that this complaint is based on the following facts:
Official Title

Continued on the attached sheet and made a part hereof: __x__ Yes _____ No

_____
Signature of Complainant

Sworn to before me and subscribed in my presence,

_JUNE 5, 2007_____
Date

at _Chicago, Illinois_____
City and State

_____
_MICHAEL T. MASON, U.S. Magistrate Judge_
Name & Title of Judicial Officer

_____
Signature of Judicial Officer

## AFFIDAVIT

I, Brent E. Potter, first being duly sworn under oath, hereby state as follows:

1.       I am a Special Agent of the Federal Bureau of Investigation ("FBI"), assigned to the Chicago Field Division. I have been employed by the FBI as a Special Agent for approximately 10 years. At this time, I am assigned to an FBI squad dedicated to the investigation of federal wire and mail fraud offenses, as well as related financial crimes.

2.       The information contained in this affidavit is based upon my personal knowledge and witness statements, as well as on information provided to me by other law enforcement officers and review of various records as further described below. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the attached complaint, it does not set forth each and every fact that I have learned during this investigation.

3.       This affidavit is made in support of a criminal complaint alleging that, beginning in or about January 2002 and continuing until in or about December 2003, Daniel J. Bealko and Co-Schemer AB devised, intended to devise and participated in a scheme to defraud the General Motors Corporation ("GM"), and to deprive it of the intangible right of the honest services of Bealko by means of materially false and fraudulent

pretenses and representations, in violation of Title 18, United States Code, Sections 1343 and 2.

## Summary

4.    As described in more detail below, the investigation to date has revealed that, beginning in or about January 2002, Co-Schemer AB engaged in the regular and ongoing payment of bribes to Bealko, then employed as a GM executive, in exchange for Bealko steering the sale of large quantities of bulk aluminum from GM to Co-Schemer AB's company, Fuci Metals USA, on favorable credit terms. Although Bealko was aware that Fuci was not sufficiently capitalized to do so, he caused GM to sell excess aluminum valued at hundreds of millions of dollars to Fuci, which Fuci was then to resell in the commodities market for a small profit. Rather than pay down Fuci's debt for the aluminum it had bought from GM, Co-Schemer AB diverted increasing shares of the funds to his own independent business ventures and to support his lifestyle. When Fuci became insolvent in or about September 2004, it left behind an unpaid debt to GM of approximately $83,300,000.

## Background

5.    Fuci Metals USA (Fuci), located in Northfield, Illinois, was incorporated by Co-Schemer AB, its President and Chief Executive Officer, on

- 2 -

September 28, 1989. Fuci held itself out to the public as a metals broker engaged in the purchase and subsequent resale for profit of various industrial metals, primarily aluminum. During 2003 and 2004, the vast majority of Fuci's business was the purchase of excess aluminum from GM, followed by resale of that aluminum for profit to third-party buyers.

6.    The FBI began its investigation of this matter in 2006 based upon a complaint from GM, which alleged that Co-Schemer AB had engaged in the payment of bribes to GM executive Daniel Bealko in exchange for the continuing sale of excess aluminum from GM to Fuci on credit. Prior to his termination from GM in approximately December 2003, Bealko was GM's Global Commodity Manager for aluminum, and was widely known within the metals industry as a influential commodity trader.

### Proffer Statement of Co-Schemer AB

7.    Co-Schemer AB has described his participation in the scheme to the FBI pursuant to the terms of a proffer letter with the U.S. Attorney. According to Co-Schemer AB, he made payments to Daniel Bealko in order to obtain and maintain a business relationship with GM wherein Fuci would be sold regular consignments of GM's excess aluminum on credit. Co-Schemer AB stated that Daniel Bealko regularly demanded bribes and kickbacks in exchange for keeping the supply of excess GM aluminum flowing to Fuci. Daniel Bealko additionally told Co-Schemer AB to keep the payments to

- 3 -

Daniel Bealko a secret. According to Co-Schemer AB, many of the payments to Daniel Bealko, at the direction of Daniel Bealko, were made by wire transfer to a bank account at Union Bank of Switzerland ("UBS") to the attention of "Roland Tobler."

8.     According to Co-Schemer AB, Fuci Metals USA lacked sufficient credit rating and capitalization for GM to approve large purchases by Fuci Metals USA on credit terms, a fact known to Daniel Bealko. Co-Schemer AB further stated that Daniel Bealko told him that, without Bealko's intervention, GM would not sell large amounts of aluminum to Fuci on credit because of Fuci's lack of capital.

## Bealko Received Bank Checks From Co-Schemer AB

9.     Through review of bank records, as well as information provided by GM, the FBI determined that an account at Bank One (now known as J.P. Morgan Chase Bank), maintained by Co-Schemer AB in the name of Fuci Metals USA,[1] was the primary account used by Co-Schemer AB to receive payment from purchasers for the excess aluminum that Fuci obtained from GM, and from which Fuci made payments to GM for the purchase of its excess aluminum. FBI examination of these account records revealed that from approximately January 23, 2002, to December 19, 2003, Co-Schemer AB paid Bealko approximately $1.3 million in the form of bank

---

[1]Banking business relating the Fuci Metals USA account was primarily conducted by Co-Schemer AB through the Wilmette branch of Bank One, located in Cook County, Illinois.

checks drafted on this account. These checks were subsequently deposited by Bealko into three bank accounts maintained by Bealko. One such account, currently still in use by Bealko, is located at National City Bank. This account received in excess of $300,000 in payments to Bealko in the form of Bank One bank checks from Co-Schemer AB.

10.   The two other bank accounts used by Bealko to receive bribe payments in the form of bank checks from Fuci were located at Comerica Bank. Both of these accounts were closed in December 2005. Prior to December 2005, Bealko's two Comerica Bank accounts received over $1 million in checks from Co-Schemer AB.

11.   Bealko's GM salary was regularly transferred via direct deposit to his National City Bank account on a biweekly basis until his termination on or about December 31, 2003. According to the bank account records, Bealko's GM direct deposit salary payments were generally under $3,000 per month. No direct deposit salary payments were made by GM to either of Bealko's two Comerica Bank accounts.

### Wire Transfers to Bealko from Co-Schemer AB Through Swiss Bank UBS

12.   Analysis of financial records gathered during the investigation revealed that numerous wire transfers from Co-Schemer AB through the Fuci account at Bank One were made to a UBS bank account in Zurich to the

- 5 -

attention of Roland Tobler between approximately November 14, 2002 and

December 29, 2003, in amounts totaling approximately $3.2 million.   For

example, on or about January 16, 2003, $200,000 was wire transferred from

the Fuci Bank One account to a UBS bank account in Zurich to the attention

of Roland Tobler.

13.    Additionally, review of Bealko's personal bank account

records demonstrate that he deposited $410,000 in bank checks drawn on

UBS in Zurich to his bank accounts at National City Bank and Comerica

Bank between March 29,2004 and August 23, 2005.

14.    FBI analysis of Bealko's bank accounts at Comerica Bank and

National City Bank demonstrate that he has spent the bribe money in large

measure on cash gifts to family members, payments to casinos, credit card

bills, on-line trading and large cash withdrawals by himself and his spouse.

### Bealko's Control Over Fuci Trading Account at Commodities Brokerage Carr Futures

15.   Carr Futures (now known as Calyon Financial) is a brokerage

firm with various offices, including one in New York, New York.  As part of

this investigation, I interviewed Individual C, an executive at Carr Futures

who established an account in Fuci's name at Carr Futures at the direction of

Co-Schemer AB and Bealko for the purpose of buying and selling options on

aluminum futures contracts.  I have also reviewed records maintained by

- 6 -

Carr Futures relating to the Fuci account.

16.    According to the materials I have reviewed, Co-Schemer AB,
Bealko and Individual C, met in Bealko's GM office located in Warren,
Michigan on or about February 5, 2003.  Individual C's report of the meeting
indicated that it was arranged by Bealko in order to discuss his proposition to
use Carr Futures trading accounts held in the name of  Fuci  to sell options on
aluminum futures contracts on the COMEX division of the New York
Mercantile Exchange ("NYMEX").  Bealko told Individual C that GM would
guarantee the trading accounts of Fuci against any trading loss and that GM
would maintain trading authority on the account through a power of attorney,
signed by Co-Schemer AB, which gave Bealko authority to make trades on the
account.  Bealko told Individual C that he was aware that Fuci was poorly
capitalized but that GM wanted to do business with the company for public
relations benefits and minority business tax credits.  More specifically,
according to Individual C's report of the meeting, Bealko told Individual C
that Fuci "did not have two nickels to rub together."

17.    Based upon Bealko's statement that GM would provide a
financial guarantee against any potential loss stemming from Fuci's trading
account, Carr Futures approved the initiation of new commodities trading
accounts in the name of Fuci.  This was done by Individual C with the

- 7 -

understanding that the Fuci trading accounts would be under Bealko's primary control and direction.

18.    I have reviewed the Fuci account statements and it appears that Bealko used the Carr Futures accounts primarily to sell options on NYMEX aluminum futures contracts.[2] Between June 2003 and February 2004, the Fuci trading accounts at Carr Futures, under Bealko's direction, received numerous payments for the sale of these options, and the accounts were also used to deliver consignments of GM's excess aluminum to third party buyers. According to Individual C, Co-Schemer AB did not provide any direction or instructions to Carr Futures regarding the trading done on Fuci's Carr Futures accounts. Bealko exercised sole control and discretion over Fuci's trading accounts at Carr Futures. In all, over $90 million, nearly all of it derived from the sale of GM aluminum, was received by Fuci's trading accounts at Carr Futures between June 2003 and February 2004 as a result of Bealko's trading activity. All of this money was subsequently sent via wire transfer to Fuci's primary bank account at Bank One, where it was then used to, among other things, pay kickbacks to Bealko, as well as the personal

---

[2] Such options are essentially bets on the future direction of the NYMEX aluminum futures contract price. When aluminum prices move in a direction favorable to the option purchaser, the options may be "exercised" by the purchaser, thus obligating the seller of the options to deliver aluminum futures contracts to the purchaser at a set price, generally at a loss to the seller of the option.

expenses of Co-Schemer AB.

19.    Individual D, Bealko's former supervisor at GM, told the FBI that Bealko did not have Individual D's approval to hold power of attorney over the futures trading accounts of Fuci, nor did he have approval to transact any business through such accounts on behalf of GM.  Individual D told the FBI that Bealko never informed him about the sale of any amount of GM owned aluminum through Fuci's trading account at Carr Futures, nor did he inform Individual D about the bribes which were being paid to him by Co-Schemer AB.

## Co-Schemer AB Spent the Money Owed to GM

20.    After purchasing each consignment of excess aluminum from GM on 60 or 90 day credit terms, Fuci normally sold the aluminum to a third party buyer within days after the metal was purchased from GM.  Individual B, the former financial controller for Fuci, told the FBI that, in general, Fuci's commission for handling the sale of GM's excess aluminum was one cent per pound of aluminum received from GM.  FBI bank record analysis shows that, instead of paying GM in full for its excess aluminum after each sale, Co-Schemer AB regularly spent the money received for the aluminum on various unrelated purchases, including executive jets, luxury automobiles, travel, tickets for sporting events, hotel rooms and cash transfers to personal

- 9 -

accounts owned by himself and his spouse. In addition, Co-Schemer AB spent large amounts of money owed to GM on the purchase and maintenance of unrelated entertainment business ventures which he incorporated and based in Las Vegas, Nevada. Among these entertainment businesses were CMX Productions, a recording and video production studio, and CMX Sports and Entertainment, a boxing and sports promotion business.

21.    According to FBI analysis of Fuci's primary bank account at Bank One, Co-Schemer AB diverted in excess of $50 million, derived almost entirely from the sale of excess GM aluminum by Fuci, from Fuci's primary account at Bank One between November 2002 and August 2004 in order to pay the expenses of his entertainment-related businesses and for various personal expenses. During the same time frame, Co-Schemer AB and his spouse received approximately $2.9 million from Fuci's primary Bank One account.

22.    Fuci became insolvent on or about September 1, 2004, and, according to information that I have received from GM, left an unpaid debt to GM of approximately $83,300,000.

## Bealko's Current Location

23.    Until January 29, 2007, Bealko's monthly statements and other bank correspondence were sent by National City Bank to his former

- 10 -

home address in Clarkston, Michigan.  As of January 29, 2007, Bealko
changed his address of record with National City Bank from his address in
Clarkston, Michigan to another address in Davison, Michigan.  This is the
address to which Bealko's regular bank statements are currently sent by
National City Bank.  In addition, the United States Postal Service processed
a change of address for Bealko on November 7, 2006, to a new residence in
Davison, Michigan from his former residence in Clarkston, Michigan.  FBI
investigation has determined that home address for Bealko in Davison,
Michigan is the residence of Bealko's son, Individual E, and Bealko's
daughter-in-law.  Based upon physical observation of the residence by FBI
agents, it does not appear that Bealko and his wife reside at this location.

24.    FBI examination of Individual E's bank records at the Davison
State Bank, Davison, Michigan, show the deposit of numerous bank checks
drawn on overseas banks.  Among these were a $22,000 deposit from UBS in
Zurich on or about August 13, 2005, and four separate deposits of $24,000
each from the Stanford International Bank, Ltd, Antigua on or about January
23, 2007.

25.    A records search by the United States Bureau of Immigration
and Customs Enforcement (ICE) has indicated that Bealko may currently be
on the Caribbean island nation of St. Kitts and Nevis.  ICE records show that

- 11 -

Bealko entered St. Kitts and Nevis on October 21, 2006, from the United States Virgin Islands. ICE records do not show any additional international travel by Bealko since that date. ICE records noted that Bealko spent a significant portion of 2006 engaged in international travel between Detroit, Miami, Amsterdam, St. Kitts and Nevis, Puerto Rico and the United States Virgin Islands.

## Conclusion

26.    Based upon the foregoing, there is probable cause to believe that, beginning in or about January 2002 and continuing until in or about December 2003, Bealko and Co-Schemer AB devised, intended to devise and participated in a scheme and artifice to defraud the GM, and to deprive it of the intangible right of honest service of Bealko by means of materially false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Sections 1343 and 2.

27.    The foregoing summary of certain facts is submitted for the limited purpose of establishing probable cause in connection with the complaint to which this affidavit is attached. I have set forth only facts that I believe are necessary to establish probable cause in this matter. This is not a

complete statement of all that I know about Fuci, Co-Schemer AB, Bealko or

others involved in the foregoing scheme to defraud.

FURTHER AFFIANT SAYETH NOT.

                                        _____
                                        Brent E. Potter
                                        Special Agent
                                        Federal Bureau of Investigation


SUBSCRIBED AND SWORN TO BEFORE ME
this 5th day of June, 2007.

_____
Michael T. Mason,
U.S. MAGISTRATE JUDGE

- 13 -